UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

BARBARA BERRY, S.A. de C.V.,

    Plaintiff,

    v.

KEN M. SPOONER FARMS, INC.,

    Defendant.

Case No. C05-5538FDB

ORDER GRANTING SPOONER FARMS SECOND MOTION FOR SUMMARY JUDGMENT

**INTRODUCTION**

This cause of action concerns raspberry plants sold by Defendant Spooner Farms to Plaintiff Barbara Berry. Plaintiff Barbara Berry is a commercial berry grower in the Michoacan area of Mexico and Defendant Spooner Farms, Puyallup, Washington, sells certified root stock for raspberry plants. Barbara Berry purchased 3,150 pounds of raspberry root stock (Summit variety) from Spooner Farms in December 2003, and this root stock was shipped to Mexico in February/March 2004. With this root stock, Barbara Berry intended to plant 74 acres, but since there was not enough root stock to plant this many acres, Barbara Berry explained that it propagated the root stock through a method known as "etiolation," which Barbara Berry asserts is commonly done in Mexico and can be considered industry standard. Barbara Berry asserts that the plants propagated

ORDER - 1

from the Spooner Farms root stock were planted but these plants produced fruit that was malformed and crumbly.

Spooner Farms moves for summary judgment on the basis that Barbara Berry did not use Spooner Farms certified root stock to grow raspberries. Rather, Barbara Berry used Spooner Farms certified root stock to produce a new generation of raspberry plants contrary to the standards of the industry, and that the "new plants" produced the fruit complained of, not the certified roots supplied by Spooner Farms. As such, any express warranty contained in the contract or any warranty implied by law does not extend to a product Spooner Farms did not manufacture. Alternatively, Spooner Farms moves for partial summary judgment limiting the number of acres that Barbara Berry can claim as the basis of damages to 11 acres and not 74.

The instant motion assumes that the invoice terms are not part of the contract; thus Barbara Berry must rely on an implied warranty as the basis of its breach of contract claim. The issue of whether the invoice terms are part of the contract will continue to proceed to trial because if they are part of the contract, Spooner Farms contends that it will be entitled to its attorney fees and costs as the prevailing party as the invoice contains an attorney fees clause.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the moving party establishes that there are no genuine issues of material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). Inferences drawn from the facts are viewed in favor of the non-moving party. *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630-31 (9th Cir. 1987).

Summary judgment is proper if a defendant shows that there is no evidence supporting an element essential to a plaintiff's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Failure of proof as to any essential element of plaintiff's claims means that no genuine issue of material fact can

ORDER - 2

exist and summary judgment is mandated. *Celotex*, 477 U.S. 317, 322-23 (1986). The nonmoving party "must do more than show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**PARTIES' CONTENTIONS**

### *Spooner Farms' Motion*

Spooner Farms specializes in growing certified nursery stock for the commercial production of rapberries, as does Sakuma Brothers Farms, also in Western Washington, which has an ideal raspberry-growing climate and is the center of raspberry production in North America. Spooner Farms describes the propagation process in detail, from specialized nurseries that engage in micro-propagation in controlled, sanitary conditions creating tissue culture plugs; to field propagation of the tissue culture plugs in specially prepared fields by nurseries such as Spooner Farms and Sakuma Brothers Farms. At the end of the first growing season, the harvested roots are cut into segments and placed in cold storage; this plant material is termed registered stock. The next spring, the segments are planted, and the roots and canes are harvested in the fall, divided and sorted, packaged and placed in cold storage. This plant material is certified stock, which will be sold to commercial farmers the same growing season, and unsold material will be discarded.

Spooner Farms contends that the standard practice in commercial raspberry farming is to plant certified nursery stock directly into the production fields. In Mexico, when using certified root stock, the standard practice is to plant 300 pounds per acre. Spooner Farms contends that Barbara Berry used the 3,150 pounds of root stock from Spooner Farms to plant approximately 69 acres of land rather than approximately 11 acres of land. Furthermore, Spooner Farms contends that Barbara Berry created this nearly seven-fold increase in planting material by embarking on its own propagation program.

Spooner Farms notes that in addition to the new plants that Barbara Berry propagated itself, it also planted 4.8 acres with roots from Sakuma Nursery. Barbara Berry alleges that the fruit

ORDER - 3

produced from the Spooner Farms plants was malformed, but that this problem was not present as to the plants obtained from the roots from Sakuma Nursery. Spooner Farms asserts the Liepold Frams near Portland, Oregon purchased Summit variety certified root stock from it and planted it in its production fields in Spring 2004. Following standard farming methods, Spooner Farms asserts that the unaltered certified root stock grew into plants that have produced commercially marketable fruit every harvest, that there have been no defects in the fruit, which has been sold at market prices.

The Ninth Circuit remanded the issue of whether the invoice terms are part of the contract. If the invoice terms are part of the contract, Barbara Berry's claims will be dismissed in their entirety. For the purposes of this motion, Spooner Farms assumes that the invoice terms are not part of the contract; therefore, there are no express warranties because the only express warranty is contained in the Spooner Farms invoice. Without an express warranty, Barbara Berry must rely on an implied warranty as the basis of its breach of contract claim.

In its order, the Ninth Circuit held that the U.N. Convention on Contracts for the International Sale of Goods (CISG) applies in this matter. The burden of proof is on the buyer to prove that the product was defective at the time of delivery. Spooner Farms contends that Barbara Berry cannot prove that the Spooner Farms root stock was defective at the time of delivery because of two undisputed facts: (1) the allegedly defective fruit came from a new generation of plants created by Barbara Berry; and (2) the same generation of root stock was sold to another farmer and performed as expected.

Spooner Farms contends that it is undisputed that the fruit complained of was grown on "new plants" propagated from the certified roots and not the certified roots themselves. Thus, Spooner Farms argues that any implied warranties do not extend to a product that Spooner Farms did not manufacture. Moreover, continues Spooner Farms, this is the logical result given the difficulties associated with field propagation of raspberries. Spooner Farms cites the testimony of Craig Ford regarding field propagation, which is performed under tightly controlled conditions, that is done with

ORDER - 4

tissue culture plants or registered stock, and it is not done with certified stock because doing so results in a plant that is genetically too many generations removed from the original plant. (Ford Decl. ¶ 16.)

Spooner Farms contends that its certified root stock was merchantable at the time of delivery. Moreover, the same certified stock was also delivered to another buyer, Liepold Farms, which planted the root stock in its production fields to grow berries that were then sold to customers at market rates.

Spooner Farms also argues that even if there were a breach of warranty, the evidence is insufficient as a matter of law to prove that the breach caused the alleged damage, because there are so many potential causes of the damaged fruit that are beyond the control of Spooner Farms.

Alternatively, Spooner Farms argues that even if the implied warranty were extended to Barbara Berry's "new plants" and there were facts to demonstrate that the certified stock was defective at delivery, Barbara Berry's damages should be limited as a matter of law because they were not foreseeable, because under the CISG, Article 74, a buyer may only recover those damages that were foreseen or reasonably foreseeable by the seller as a probable consequence of breach. In this case, Spooner Farms argues that in assessing foreseeability, "the usual or intended use by the buyer should be the decisive factor." Peter Schlechtriem, Uniform Sales Law-The UN-Convention on contracts for the International Sale of Goods 97 (1986); *see also, Skibs A/S Gylfe v. Hyman-Michaels Co.*, 438 F.2d 803, 808 (6th Cir. 1971)(stating that loss due to breach of contract is unrecoverable where the damage is unforeseeable at the time of contracting). Thus, Spooner Farms argues that damages are foreseeable only if they flow from standard commercial practice in the industry, and it violates the industry standard for a buyer of certified root stock to propagate.

Additionally, Spooner Farms argues that Article 74 of CISG states that damages, including loss of profit, "may not exceed the loss which the party in breach foresaw or ought to have foreseen

ORDER - 5

...." Under industry standard planting practices, Spooner Farms sold Barbara Berry enough root stock for 11 acres, and even if it is found that Spooner Farms should have foreseen Barbara Berry's type of damages arising from the propagated plants, damages should be limited to those resulting from 11 acres of plants.

### *Barbara Berry's Response in Opposition*

Barbara Berry argues that Spooner Farms' summary judgment motion is premature because Spooner Farms failed to comply with Fed. R. Civ. P. 26(a)(2) in failing to disclose the expert testimony of Craig Ford, a manager/operator of a blueberry farm, by the first deadline set in the April 3, 2008 Minute Order and by failing to disclose the testimony pursuant to the December 1, 2008 Minute Order and instead filing a motion for summary judgment based on the testimony of an undisclosed expert. Additionally, Barbara Berry argues that Spooner Farms failed to disclose its expert in response to Barbara Berry's Interrogatories and Requests for Production to identify the experts it expects to call at trial.

Alternatively, Barbara Berry argues that if summary judgment is not denied as premature, it should be denied because there are numerous issues of material fact. First, Barbara Berry contends that the propagated plants were exact copies of the plants provided by Spooner Farms and cites to Spooner Farms' Motion at page 3 where it states that "each new generation of a propagated plant is a genetic copy of the prior generation."

Second, Barbara Berry contends that it is common industry practice in Mexico and Chile to use certified root stock to propagate additional plants for planting, and that the etiolation method is the standard practice in the raspberry production industry in Mexico, citing Decl of Roberto Armijo, an employee of Sun Belle Mexico, S.A. de C.V. Barbara Berry contends that Craig Ford has no expertise with respect to the production of raspberries in Mexico and that he incorrectly implies that Barbara Berry propagated raspberry plants from field grown plants rather than from certified root stock.

ORDER - 6

Third, Barbara Berry contends that Craig Ford engages in "rank speculation" as to why the plants propagated from Spooner Farms' certified root stock produced malformed, crumbly fruit (*e.g.*, improper propagation, diseases, improper field preparation, poor fertility, etc.). Moreover, Barbara Berry contends that Roberto Armijo has rebutted every causation theory put forth by Craig Ford, and that, therefore, because there are conflicting opinions on causation, a jury must resolve the question. Barbara Berry asserts that in the May 2, 2005 letter from Jeffrey Spooner to Gustavo Gonzalez (Ex. D. To Gonzalez Decl.) Spooner's initial conclusion was that the defect was genetic ("this is an off-clone type resulting from tissue culture and not virus.").

Fourth, Barbara Berry contends that the Declaration of Ron Liepold who testifies that he purchased the same root stock (Summit variety) as Barbara Berry in the Spring 2004 planting season is unsupported by any documentation; that Spooner Farms represented to Barbara Berry that 3,150 pounds was all the root stock that it had available when Barbara Berry was negotiating the sale in December 2003 and January 2004. Finally, while Spooner Farms may have sold raspberry plants without the clone defect to another farmer does not support the conclusion that the plants sold to Barbara Berry were not defective.

Fifth, Barbara Berry contends that it made it clear to Spooner Farms that it intended to plant approximately 74 acres and that it was, therefore, foreseeable that Barbara Berry would use the root stock to propagate additional root stock for planting substantially more than 11 acres. Moreover, it is likely that Spooner Farms was aware that it was standard practice to use certified root stock to propagate plants.

Sixth, and finally, Barbara Berry argues that the lost profit damages claimed from being unable to market malformed, crumbly fruit were foreseeable. Barbara Berry contends that damages should not be limited to 11 acres because Barbara Berry made it clear to Spooner Farms that it intended to plant approximate 74 acres, and thus the amount of damages claimed was foreseeable.

ORDER - 7

***Barbara Berry's Notice of Withdrawal of Armijo Declaration & Request for Continuance***

On March 20, 2009, Barbara Berry gave notice of withdrawal of the Armijo Declaration, which he had yet to sign because he was traveling, and now, according to Barbara Berry, his employer, Sun Belle, has prohibited him from signing the declaration because it does not want to be involved in litigation involving a nursery in the berry business. Barbara Berry requests a continuance pursuant to Fed. R. Civ P. 56(f) because although it has contacted another expert, it has not yet had time to obtain his opinion, his report, and to have him execute a declaration in opposition to the summary judgment motion.

Spooner Farms responds that this case was filed August 15, 2005 and that Barbara Berry has had the burden of proof and the opportunity to prepare its own evidence. Moreover, Spooner Farms contends that Barbara Berry disclosed Roberto Armijo in August 2008 as a person with knowledge, and in the seven months since then should have been able to determine whether he would be willing to testify. Additionally, Spooner Farms argues that Barbara Berry's articulated reason for Armijo not signing his declaration is not admissible because it is hearsay, and there is no evidence of Sun Belle's motives, which may be that it does not agree with some or all of Armijo's opinions. Finally, Fed. R. Civ. P. 56(a)(1) contemplates that summary judgment can be brought any time twenty days after commencement of a lawsuit. The current summary judgment motion was set for hearing only 17 days before Barbara Berry was required to disclose experts, so that if it needed additional time to secure an expert, it is because Barbara Berry has not been diligent in preparing its case. The decision to grant a continuance pursuant to Fed. R. Civ. P. 56(f) is within the sound discretion of the trial court. *Qualls v. Blue Cross*, 22 F.3d 839, 844 (9th Cir. 1994), and the motion should be denied unless the moving party shows that it pursued its discovery opportunities diligently.

***Spooner Farms' Reply***

First, Spooner Farms moves to strike the reference to Jeffrey Spooner's May 2, 2005 letter because they were statements made in compromise negotiations regarding the claim, citing ER

ORDER - 8

408(a)(2), and the concluding paragraph of the letter makes an offer to "replace material or refund cost" to resolve the claim. (Gonzales Decl. Ex. D.)

Next, Spooner Farms argues that the parties are in agreement that Article 74 of the CISG limits damages to "the loss which the party in breach foresaw or ought to have foreseen at the time of the conclusion of the contract, in light of the facts and matters of which he then knew or ought to have known, as a possible consequence of the breach." Spooner Farms argues that Barbara Berry does not claim that it told Spooner Farms it intended to propagate – it said it intended to plant 75 acres – and the inference should not be drawn that the 11 acres' worth of roots Spooner Farms sold would be propagated by Barbara Berry. The email exchanges between Spooner Farms and Barbara Berry indicate that Barbara Berry was seeking additional roots; Barbara Casillas emailed Andrea Spooner (Exhibit A to Casillas Decl.): "I want to know when your other clients get you a cancelation [sic] because I am interested in buying the roots." This was confirmed in the Casillas and Gonzalez declarations as well, where they state their desire to obtain more roots if any other orders are cancelled, as Barbara Berry wanted to cover approximately 75 acres. Thus, Spooner Farms contends that in light of the express statements by Barbara Berry to Spooner Farms indicating Barbara Berry would be planting rather than propagating, there is no basis for asserting that Spooner Farms should have foreseen propagation due to the existence of any alleged industry standard in Mexico. Spooner Farms argues that the extent of damages was not foreseeable in excess of 11 acres, and the type of damages arising from fruit grown from propagated plants was also not foreseeable.

Spooner Farms argues that the implied warranty does not extend to the propagated plants, citing *Wittkamp v. United States*, 343 F. Supp. 1075, 1078-79 (1972) holding that implied warranties do not extend to a new product created by the purchaser.

Spooner Farms argues that Barbara Berry has not met its burden of proof to establish breach of the implied warranty because it did not attempt to grow any fruit from Spooner Farms certified root stock. While Barbara Berry argues that the plants that it propagated are genetic copies of the

ORDER - 9

certified roots and that any genetic defect carries forward, there is no factual basis for the allegation of a genetic defect that causes the plants to produce crumbly fruit. Spooner Farms cites the testimony of Rod Liepold who planted Summit certified root stock that was genetically identical to the Summit certified root stock received by Barbara Berry, and which grew as expected and did not produce crumbly fruit. (Liepold Decl.; sales invoice attached as Ex. A to Decl. of Andrea Spooner.) Spooner Farms argues that Barbara Berry cannot establish that the alleged defect was the proximate cause of its damages because it has not presented any evidence to rule out other factors as the cause of the crumbly fruit. Moreover, the Sakuma plants were interspersed in the same rows as the Spooner plants with no clear boundaries between them; thus there is no basis to assert that the defective plants were derived from the Spooner plants rather than the Sakuma plants.

Finally, Spooner Farms argues that Craig Ford's declaration should not be stricken because there is nothing in the court rules to preclude a defendant from submitting the testimony of an expert prior to the disclosure deadline or from moving for summary judgment. If Barbara Berry's argument were accepted, a plaintiff would be insulated from a motion for summary judgment until the last date to disclose experts, and this would be contrary to Fed. R. Civ. P. 56(a)(1), which provides that a motion can be brought anytime at least 20 days after the commencement of the action. Moreover, Spooner Farms argues that Barbara Berry agrees with Craig Ford's description of the process for propagation of certified stock, relies on his testimony that a propagated plant is a genetic copy of its parent, and does not dispute that there are multiple potential causes of crumbly fruit. Spooner Farms points out that Barbara Berry did not disclose any experts, and it has the burden of proof.

**DISCUSSION AND CONCLUSION**

First, Barbara Berry's request for a continuance is not well taken and will be denied, as it had well over three years to determine its need for an expert to prove its prima facie case and it could have obtained an expert had it acted diligently. Second, the Court declines to exclude the testimony of Craig Ford for the reasons advanced by Spooner Farms.

ORDER - 10

Having considered the parties' arguments and authorities and their submissions accompanying their memoranda, the Court concludes that Spooner Farms' Second Motion for Summary Judgment must be granted. Barbara Berry produced new plants from the certified root stock that it purchased from Spooner Farms; there are no implied warranties attached to these new plants that Spooner Farms did not sell. Moreover, there is no showing that the certified root stock supplied by Barbara Berry was defective at the time of delivery, and there is contrary evidence that Rod Liepold planted Summit certified root stock that was genetically identical to the Summit certified root stock received by Barbara Berry, and which certified root stock grew as expected and did not produce crumbly fruit. Additionally, Barbara Berry has not established proximate cause, as it has not identified the alleged genetic defect nor explained how it caused crumbly fruit when there are many reasons why a farmer may not be able to grow a good crop of fruit (soil conditions, bee activity, farming methods, diseases, etc.), which are outside the control of the nursery stock provider. Moreover, Craig Ford's testimony explains that certified root stock is sold to growers for planting – not propagation – because by continuing to propagate beyond the certified stock stage results in a plant that is genetically too many generations removed from the original plant; he states in his declaration at ¶ 16:

> By continuing to propagate beyond the certified stock stage, the resulting generation of plant is no longer a product of Spooner Farms. This can result in the new plant becoming an off-type, meaning it no longer possesses the major characteristics of the originating plant, or can have other induced problems stemming from sources out of the control of Spooner Farms.

Craig Ford then cites to several publications "grower guides" that recommend against using planting stock from field grown plants, and he states that leading plant breeders recommend against propagating from field grown stock (Ford Decl. ¶¶16 & 17.) Thus, for these reasons, and on the basis of Spooner Farms' fully articulated arguments contained in its submissions, Spooner Farms' Second Motion for Summary Judgment will be granted.

ORDER - 11

The remaining issue of whether the invoice terms are part of the contract, including entitlement to attorneys fees and costs for the prevailing party, remains for trial.

NOW, THEREFORE, IT IS ORDERED: Spooner Farms' Second Motion for Summary Judgment [Dkt. # 51] is GRANTED. Because the issue of whether the invoice terms are part of the contract remains, the Clerk should NOT enter judgment at this time.

DATED this 2nd day of April 2009.

FRANKLIN D. BURGESS
UNITED STATES DISTRICT JUDGE

ORDER - 12